FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2020 DEC 18 P 3:14

CAROL L. MICHEL
CLERK

SEALED

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**FELONY**

**BILL OF INFORMATION FOR CONSPIRACY TO
COMMIT HEALTH CARE FRAUD AND NOTICE OF FORFEITURE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 20-149 |
| v. | * | SECTION: SECT. I MAG. 4 |
| CHRISTOPHER BLACKSTONE | * | VIOLATIONS: 18 U.S.C. § 1347 |
| | * | 18 U.S.C. § 1349 |

\*   \*   \*

The United States Attorney charges that:

**COUNT 1**
(Conspiracy to Commit Health Care Fraud)

A.   **AT ALL TIMES MATERIAL HEREIN**:

1. Prime Pharmacy Solutions, LLC, ("Prime Pharmacy") was formed in 2014 and located in Slidell, Louisiana. It was primarily a closed door pharmacy focused on the production of compounded medications.

X Fee   USA
___Process
X Dktd
___CtRmDep
___Doc.No.

2. When created properly, compounded medications were drugs combined, mixed, or altered by licensed pharmacists or other practitioners to meet the specialized needs of individual patients who could not receive FDA approved versions of the medications due to various medical conditions.

3. Defendant **CHRISTOPHER WARNER BLACKSTONE** ("**BLACKSTONE**") was the primary owner of Prime Pharmacy.

4. TRICARE, administered by the United States Department of Defense, provided health care benefits for United States military personnel and their families. TRICARE, like other health care benefit programs, was a health care benefit program within the meaning of Title 18, United States Code, Section 24(b).

5. Individuals who qualified for TRICARE benefits or the benefits of other health care benefit programs were commonly referred to as "beneficiaries."

6. TRICARE and other health care benefit programs provided prescription drug coverage, including prescriptions for compounded medications, to eligible beneficiaries through its pharmacy program or similar drug plans.

7. TRICARE's pharmacy program and other health care benefit programs' drug plans were administered by Pharmacy Benefit Managers ("PBMs"), whose responsibility was to adjudicate and process payment for prescription drug claims submitted by eligible pharmacies. Specifically, TRICARE's PBM was known as Express Scripts.

8. Prime Pharmacy contracted directly with PBMs, including Express Scripts. In contracting with PBMs, including Express Scripts, Prime Pharmacy agreed to adhere to the rules and regulations of the PBMs, which reserved the authority to refuse to reimburse any and all claims not submitted in accordance with its rules and regulations. PBMs also audited participating pharmacies to ensure compliance with its rules and regulations.

9. Most, if not all, PBMs, including Express Scripts, required participating pharmacies to collect copayments from beneficiaries, and specified that copayments could not be waived or reduced. Consistent copayment collection was necessary to prevent fraud, as copayments gave beneficiaries financial incentives to reject medications that were not medically necessary or had little to no value to beneficiaries' treatments. PBMs, including Express Scripts, relied upon participating pharmacies to collect copayments.

10. Prime Pharmacy, through its contracts with PBMs, including Express Scripts, represented that it would collect copayments, and not waive or reduce them. These representations by Prime Pharmacy were material to the PBMs, including Express Scripts.

11. On October 21, 2014, **BLACKSTONE**, on behalf of Prime Pharmacy, contracted with Express Scripts, as well as with other health care benefit programs and PBMs, and further obligated Prime Pharmacy to follow the rules and regulations of Express Scripts and TRICARE, as well as the other health care benefit programs and PBMs.

12. In order to be reimbursed for prescription drugs provided to beneficiaries, pharmacies, including Prime Pharmacy, were required to first obtain prescriptions authorized by physicians or other qualified medical providers ("prescribers"). These prescriptions were supposed to evidence that the prescribed drugs, including compounded medications, were medically necessary. TRICARE and other health care benefit programs, through their respective PBMs, would not reimburse claims for prescription drugs, including compounded medications, that were not medically necessary.

13. Upon receiving prescriptions, pharmacies, including Prime Pharmacy, submitted claims for prescription drugs to health care benefit programs or PBMs, such as Express Scripts. Health care benefit programs or PBMs, including Express Scripts, reimbursed pharmacies at specified rates, minus any copayments to be paid by beneficiaries.

3

14.   TRICARE and other health care benefit programs, through its PBMs, reimbursed pharmacies, including Prime Pharmacy, for compounded medications per ingredient compounded into the medication. Thus, the more ingredients compounded into medications, the higher the reimbursement amounts.

**B.   THE CONSPIRACY:**

Beginning in or around 2014, and continuing through in or around April 2016, in the Eastern District of Louisiana and elsewhere, the defendant, **BLACKSTONE** and other co-conspirators, known and unknown to the U.S. Attorney, did knowingly and willfully, combine, conspire, confederate, and agree, to commit health care fraud, that is to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, TRICARE and other health care benefit programs, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

**C.   THE SCHEME AND ARTIFICE TO DEFRAUD:**

It was part of the scheme and artifice to defraud that **BLACKSTONE** and other co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to TRICARE and other health care benefit programs; and (b) concealing the submission of false and fraudulent claims to TRICARE and other health care benefit programs.

It was further part of the scheme and artifice to defraud that **BLACKSTONE** and other co-conspirators, acting on behalf of Prime Pharmacy, selected formulas for compounded medications, not based on scientific evaluations of effectiveness or individualized patient need but

4

rather, to maximize reimbursement from TRICARE and other health care benefit programs ("High-Yield Compounded Medications").

It was further part of the scheme and artifice to defraud that **BLACKSTONE** and other co-conspirators, acting on behalf of Prime Pharmacy, mass produced these High-Yield Compounded Medications and further collaborated with co-conspirators to create a series of preprinted prescription forms encouraging and directing prescribers to prescribe these High-Yield Compounded Medications.

It was further part of the scheme and artifice to defraud that as reimbursement opportunities changed for certain ingredients compounded into these High-Yield Compounded Medications, **BLACKSTONE** and other co-conspirators, either added ingredients to or deleted ingredients from these High-Yield Compounded Medications for the purpose of maximizing profit, not patient care, and accordingly, revised the preprinted prescription forms.

It was further part of the scheme and artifice to defraud that Prime Pharmacy contracted with marketers associated with Marketing Company 1 and Marketing Company 2 to solicit prescribers to prescribe High-Yield Compounded Medications, and further paid kickbacks to marketers when they obtained signed prescriptions that were reimbursed by TRICARE and other health care benefit programs.

It was further part of the scheme and artifice to defraud that these marketers routinely induced prescribers to prescribe these High-Yield Compounded Medications by not only providing the preprinted prescription forms but also by paying kickbacks to the prescribers, after the High-Yield Compounded Medications had been dispensed by Prime Pharmacy and reimbursed by TRICARE and other health care benefit programs.

It was further part of the scheme and artifice to defraud that these marketers routinely induced beneficiaries of TRICARE and other health care benefit programs to receive High-Yield Compounded Medications by paying kickbacks to these beneficiaries.

It was further part of the scheme and artifice to defraud that to induce beneficiaries to receive these High-Yield Compounded Medications, **BLACKSTONE** and other co-conspirators, conspired to either waive copayments or pay copayments on behalf of beneficiaries, even though TRICARE and other health care benefit programs required copayments to be paid by beneficiaries and collected by Prime Pharmacy.

It was further part of the scheme and artifice to defraud that between approximately 2014 and approximately April 2016, Prime Pharmacy dispensed prescriptions for High-Yield Compounded Medications to beneficiaries of TRICARE and other health care benefit programs that were not medically necessary, induced by kickback payments, or where copayments were either waived or paid by Prime Pharmacy, and accordingly, submitted or caused to be submitted false and fraudulent claims for reimbursement to health care benefit programs and PBMs, including Express Scripts.

It was further part of the scheme and artifice to defraud that TRICARE and other health care benefit programs, as well as PBMs, including Express Scripts, relied upon **BLACKSTONE** and other co-conspirators' false and fraudulent representations (a) that the medications dispensed ere medically necessary and not induced by kickback payments; and (b) that copayments were properly collected.

It was further part of the scheme and artifice to defraud that in reliance on those and other false representations, TRICARE and other health care benefit programs reimbursed Prime Pharmacy approximately $16 million for High-Yield Compounded Medications.

D.  **OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY:**

1. On or about June 11, 2015, **BLACKSTONE** sent an email with a pre-printed prescription pad attached to Co-conspirator 1.

2. On or about July 23, 2015, certain co-conspirators known and unknown to the U.S. Attorney, dispensed a prescription for a High-Yield Compounded Medication to J.V., a TRICARE beneficiary, which was not medically necessary.

3. On or about July 23, 2015, certain co-conspirators known and unknown to the U.S. Attorney, dispensed a prescription for a High-Yield Compounded Medication to C.M., a TRICARE beneficiary, which was not medically necessary.

4. On or about December 29, 2015, **BLACKSTONE** sent an email referencing "alternative formulas" for pre-printed prescriptions to a co-conspirator.

All in violation of Title 18, United States Code, Section 1349.

## NOTICE OF FORFEITURE

1. The allegations of Count 1 of this Bill of Information are incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States.

2. As a result of the offenses alleged in Count 1, the defendant, **CHRISTOPHER BLACKSTONE**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, involved in said offenses, which constitutes or is derived from proceeds traceable to such offense.

3. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third person;

  (c)  has been placed beyond the jurisdiction of the Court;

  (d)  has been substantially diminished in value; or

  (e)  has been commingled with other property which cannot be subdivided without difficulty;

the United States shall seek a money judgment and, pursuant to Title 21, United States Code, Section 853(p), forfeiture of any other property of the defendant up to the value of said property.

            PETER G. STRASSER
            UNITED STATES ATTORNEY

            _____
            KATHRYN MCHUGH
            Assistant United States Attorney

New Orleans, Louisiana
December 18, 2020

# United States District Court

## FOR THE
### EASTERN DISTRICT OF LOUISIANA

No. _____

UNITED STATES OF AMERICA

vs.

CHRISTOPHER BLACKSTONE

BILL OF INFORMATION FOR CONSPIRACY TO COMMIT HEALTH CARE FRAUD AND NOTICE OF FORFEITURE

Violation: 18 U.S.C. §§ 1347 and 1349

Filed _____, 20 20

_____, Clerk.

By _____, Deputy

*Assistant United States Attorney*
Kathryn McHugh