UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | * | CRIMINAL NO. 20-149 |
|---|---|---|
| v. | * | SECTION: "I" |
| CHRISTOPHER BLACKSTONE | * | |

* * *

## FACTUAL BASIS

The Defendant, **CHRISTOPHER BLACKSTONE** (hereinafter, the "Defendant" or "**BLACKSTONE**"), has agreed to enter a plea of guilty pursuant to a plea agreement. **BLACKSTONE** has agreed to plead guilty to conspiracy to commit health care fraud in violation of Title 18, United States Code, Section 1349 as charged in Count One of the Bill of Information.

Should this matter have proceeded to trial, the Defendant stipulates that the Government would have proven, through the introduction of credible testimony from witnesses and from Special Agents from the United States Department of Defense – Office of the Inspector General and Homeland Security Investigations, and admissible, tangible exhibits, the following facts, beyond a reasonable doubt, to support the allegations in the Bill of Information now pending against the Defendant. Both the Government and the Defendant do hereby stipulate and agree that the following facts set forth a sufficient factual basis for the crime to which the Defendant is pleading guilty. Unless stated otherwise, the following acts occurred within the jurisdiction of the Eastern District of Louisiana.

Beginning in or around March 2014, and continuing through in or around October 2016, in the Eastern District of Louisiana and elsewhere, the Defendant did knowingly and willfully, that

is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with Co-conspirators 1, 2, 3 and 4 and other persons to knowingly and willfully execute a scheme and artifice to defraud TRICARE, a federal health care benefit program affecting commerce, and other health care benefit programs (in violation of Title 18, United States Code, Section 1347), in violation of Title 18, United States Code, Section 1349.

Prime Pharmacy was located in Slidell, Louisiana and was established on or around March 2014. Prime Pharmacy was primarily a closed door pharmacy whose primary business focus was the production of compounded medication, which, when created properly, were drugs combined, mixed, or altered by licensed pharmacists or other practitioners to meet the specialized needs of individual patients.

The Defendant, was the owner of Prime Pharmacy, and, supervised the operations of the pharmacy along with the Pharmacist-in-Charge ("PIC"), Co-conspirator 1. The PIC was responsible for supervision, management, and compliance with all federal and state pharmacy laws and regulations pertaining to Prime Pharmacy's pharmacy practice.

The Defendant, on behalf of Prime Pharmacy, contracted with various entities, including Pharmacy Benefit Managers ("PBMs"), obligating Prime Pharmacy to collect copayments from beneficiaries in order to be reimbursed by various health care benefit programs, including TRICARE. Additionally, the Defendant, on behalf of Prime Pharmacy worked with Co-conspirator 2 to market the compounded medications produced by Prime Pharmacy.

Beginning in or around March 2014, Defendant, Co-conspirator 1, and other co-conspirators, acting on behalf of Prime Pharmacy, selected formulas for compounded medications, not based on scientific evaluations of effectiveness or individualized patient need but rather, to maximize reimbursement from TRICARE and other health care benefit programs ("High-Yield

Compounded Medications"). Defendant and other co-conspirators then produced significant volumes of these High-Yield Compounded Medications at Prime Pharmacy.

Defendant, Co-conspirator 1, Co-conspirator 2, Co-conspirator 3 (the IT Manager of Prime Pharmacy) and Co-conspirator 4 (the office manager of Prime Pharmacy) created a series of preprinted prescription forms encouraging and directing prescribers (doctors) to prescribe these High-Yield Compounded Medications to TRICARE beneficiaries. These Medications were determined by the co-conspirators and others by running "soft adjudications" through the reimbursement software, to determine what Medications would provide the highest reimbursement rates and were therefore not what was medically necessary for a patient. Prime Pharmacy paid the co-conspirators and others when signed prescriptions from doctors were obtained that were reimbursed by TRICARE and other health care benefit programs.

Beginning in or around March 2014, and continuing through in or around April 2016, Prime Pharmacy dispensed prescriptions for High-Yield Compounded Medications to beneficiaries of TRICARE and other health care benefit programs that were not medically necessary, induced by kickback payments, or where copayments were either waived or credited by Prime Pharmacy, and accordingly, submitted or caused to be submitted false and fraudulent claims for reimbursement to TRICARE, other health care benefit programs, and PBMs.

For example, on or about July 23, 2015, Prime dispensed a prescription for a High-Yield Compounded Medication to J.V., a TRICARE beneficiary. J.V. never saw a doctor before receiving the compounded medication; therefore, the prescription as written was not medically necessary and the reimbursement submitted by Prime Pharmacy to TRICARE for the prescription was fraudulent.

On or about July 23, 2015, Prime dispensed a prescription for a High-Yield Compounded

Medication to C.M., a TRICARE beneficiary. C.M. did not see a doctor relating to the compound; therefore, the prescription as written was not medically necessary and the reimbursement submitted by Prime Pharmacy to TRICARE for the prescription was fraudulent..

TRICARE and other health care benefit programs require medical necessity for prescription reimbursements. In instances where a doctor never saw the patient and a subsequent prescription was reimbursed by TRICARE to Prime Pharmacy, that prescription lacking a doctor's authorization (obtained via forgery or without any assessment by the doctor) was de facto not medically necessary and subsequent procurement of the reimbursement was fraudulent. The reimbursements obtained through the execution of the scheme were paid by TRICARE to Prime Pharmacy through financial institutions insured by the Federal Deposit Insurance Corporation (FDIC) affecting interstate commerce.

TRICARE and other health care benefit programs, as well as PBMs, relied upon Defendant's, Co-conspirator 1's, and other co-conspirators' false and fraudulent representations (a) that the medications dispensed were medically necessary; 2) not induced by kickback payments; or (c) that copayments were properly collected. In reliance on those and other false representations, TRICARE and other health care benefit programs reimbursed Prime Pharmacy approximately $16 million for High-Yield Compounded Medications.

Defendant received a percentage of Prime Pharmacy's profits, including a percentage of the reimbursements paid by TRICARE and other health care benefit programs procured through fraud.

In sum, the evidence would establish that **BLACKSTONE** conspired with Co-conspirators 1, 2, 3, and 4 and others to commit health care fraud.

## Limited Nature of Factual Basis

This proffer of evidence is not intended to constitute a complete statement of all facts known by **BLACKSTONE** and/or the Government. Rather, it is a minimum statement of facts intended to prove the necessary factual predicate for his guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the plea of guilty to the charged offense by **BLACKSTONE**.

The above facts come from an investigation conducted by, and would be proven at trial by credible testimony from, *inter alia*, Special Agents from the United States Department of Defense – Office of the Inspector General and Homeland Security Investigations, other witnesses, and admissible, tangible exhibits.

READ AND APPROVED:

_____  2/23/21
CHRISTOPHER BLACKSTONE     DATE
Defendant

_____  2/23/21
CATHERINE MARAIST          DATE
Counsel for Defendant

_____  2/24/21
JACK DAMPF                 DATE
Counsel for Defendant

_____  2/24/21
KATHRYN MCHUGH             DATE
Assistant United States Attorney