UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                              CRIMINAL ACTION

VERSUS                                                          No. 20-149

CHRISTOPHER BLACKSTONE                                SECTION I

### ORDER

Before the Court are defendant Christopher Blackstone's ("Blackstone") objections to the U.S. Probation Office's draft presentence report ("PSR").[1] Blackstone objects in both his objections and his sentencing memorandum[2] to the U.S. Probation Office's application of a two-level enhancement to Blackstone's offense level for "mass-marketing" pursuant to U.S. Sentencing Guidelines ("U.S.S.G.") § 2B1.1(b)(2)(A)(ii). For the reasons discussed below, the Court will overrule Blackstone's objection.

### I.   BACKGROUND

On February 24, 2021, defendant Christopher Blackstone ("Blackstone") pleaded guilty to one count of conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349.[3] The U.S. Probation Office filed a draft presentence report ("PSR")[4] and a final PSR.[5] Blackstone filed 25 objections to the draft PSR.[6] The

---

[1] R. Doc. No. 43.
[2] R. Doc. No. 84.
[3] *See* R. Doc. Nos. 22 (minute entry for rearraignment hearing), 23 (plea agreement), 24 (factual basis).
[4] R. Doc. No. 43.
[5] R. Doc. No. 86.
[6] R. Doc. No. 57.

government joined Blackstone in two of his objections,[7] and informed the Court that the government does not oppose any of Blackstone's other objections.[8] Blackstone subsequently filed a sentencing memorandum[9] and the government filed a response.[10]

## II.   LAW AND ANALYSIS

Section 2B1.1(b)(2)(A)(ii) of the U.S.S.G. provides for a two-level enhancement "[i]f the offense . . . was committed through mass-marketing." The commentary to § 2B1.1 defines "mass-marketing" as "a plan, program, promotion, or campaign that is conducted through solicitation by telephone, mail, the Internet, or other means to induce a large number of persons to (i) purchase goods or services; (ii) participate in a contest or sweepstakes; or (iii) invest for financial profit." *Id.* cmt. n.4(A). The commentary notes "a telemarketing campaign that solicits a large number of individuals to purchase fraudulent life insurance policies" as an example of mass-marketing. *Id.*

However, "[m]ass marketing is not limited to the mass communication methods listed in the commentary; the definition 'explicitly contemplates "other means" of mass-marketing.'" *United States v. Isiwele*, 635 F.3d 196, 203–04 (5th Cir.

---

[7] R. Doc. No. 59 (joint objections to ¶¶ 62 and 64 of the draft PSR, filed by the government and Blackstone).
[8] *See* June 27, 2022, email from AUSA Kathryn McHugh to this Court's law clerk, stating that "the government is not opposing any of Mr. Blackstone's objections."
[9] R. Doc. No. 84.
[10] R. Doc. No. 92.

2

2011) (quoting *United States v. Magnuson*, 307 F.3d 333, 335 (5th Cir. 2002) (per curiam)). The enhancement also applies "where the mass-marketing is not targeted at the specific victims of the fraud[.]" *United States v. Davis*, 53 F.4th 833, 851 (5th Cir. 2022) (quoting *United States v. Valdez,* 726 F.3d 684, 694 (5th Cir. 2013)). As well, defendants need not have been "personally involved in the mass marketing." *Isiwele*, 635 F.3d at 204.

As stated, the mass-marketing enhancement is applicable if an "offense . . . was committed through mass-marketing." U.S.S.G. § 2B1.1(b)(2)(A)(ii).

> "'Offense' means the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1 cmt. n.1(H). And "in the case of a jointly undertaken criminal activity," relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).

*United States v. Mauskar*, 557 F.3d 219, 233 (5th Cir. 2009) (alteration in original).

Paragraph 63 of the final PSR states that "[t]he marketer for Prime Pharmacy located other marketers to find beneficiaries that were willing to receive medically unnecessary compounds and doctors willing to prescribe compounds without medical necessity."[11] The paragraph further states that, "because the instant offense was committed through mass marketing," the two-level enhancement pursuant to U.S.S.G. §2B1.1(b)(2)(A)(ii) should be applied to Blackstone's offense level.[12]

---

[11] R. Doc. No. 86, ¶ 63.
[12] *Id.*

3

Blackstone objects to the application of the two-level enhancement for mass-marketing as "[t]he offense conduct does not contain any facts suggesting that Prime Pharmacy engaged in 'mass marketing' as part of its operations."[13] He further argues that "Prime Pharmacy, because it was licensed in multiple states, engaged the services of marketers in other states," but that "[t]his in and of itself, is clearly not 'mass marketing' under the definition"[14] in U.S.S.G. § 2B1.1, cmt. n.4(A). Blackstone also argues in his sentencing memorandum that "[t]he factual basis sets forth that Prime marketed to doctors and to individual beneficiaries, but it does not indicate any mass solicitation as defined in the Guidelines."[15] Blackstone cites no caselaw supporting his argument that the marketing efforts made on behalf of Prime Pharmacy do not constitute mass-marketing.

In its response to Blackstone's objection, the U.S. Probation Office asserts that the mass-marketing enhancement is applicable because Blackstone's "co-defendants/co-conspirators who recruited beneficiaries that were willing to receive medically unnecessary compounds and doctors willing to prescribe compounds without medical necessity engaged in mass marketing in furtherance of the conspiracy to defraud Tricare . . . ."[16]

---

[13] R. Doc. No. 57, at 3.
[14] *Id.*
[15] R. Doc. No. 84, at 13–14.
[16] R. Doc. No. 86, at 31. The government failed to address the applicability of the mass-marketing enhancement in its response to Blackstone's sentencing memorandum. However, as previously noted, *supra* n.8, the government communicated to the Court that it did not oppose Blackstone's objections to the draft

The factual basis and the bill of information in this case support U.S. Probation's position. The factual basis states that Blackstone, "on behalf of Prime Pharmacy[,] worked with Co-conspirator 2 to market the compounded medications produced by Prime Pharmacy."[17] It further notes that Blackstone and his co-conspirators' fraudulent scheme resulted in "TRICARE and other health care benefit programs reimburs[ing] Prime Pharmacy approximately $16 million . . . ." Thus, Blackstone admitted that he worked to market Prime Pharmacy and these efforts contributed to $16 million dollars of ill-gotten gains to Blackstone and his co-conspirators.

While the factual basis does not provide specific information as to the number of people targeted by Prime Pharmacy's marketing, the Fifth Circuit has held that "the mass-marketing enhancement 'merely requires advertising that reaches a large number of persons.'" *United States v. Morrison*, 713 F.3d 271, 285 (5th Cir. 2013) (quoting *Magnuson*, 307 F.3d at 335) (further quotations omitted). Sixteen million dollars' worth of reimbursements from TRICARE and other health care benefit programs speaks to the extent of Blackstone and his co-conspirators' marketing efforts. The Court is not convinced that merely because the precise number of people targeted or reached has not been provided to the Court, the marketing done on behalf

---

PSR. Further, in its response to Blackstone's sentencing memorandum, the government stated that "the government and defendant agree that Blackstone's total offense level should be 23[.]" R. Doc. No. 92, at 3. If the mass-marketing enhancement were removed, Blackstone's offense level would in fact be 23.

[17] R. Doc. No. 24, at 2.

5

Case 2:20-cr-00149-LMA-KWR Document 95 Filed 06/14/23 Page 6 of 8

of Prime Pharmacy was not mass-marketing—especially in light of the millions of dollars Blackstone and his co-conspirators made from their scheme.

The bill of information to which Blackstone pleaded guilty further shows that the marketing done as part of Blackstone and his co-conspirators' "scheme and artifice to defraud" rises to the level of mass-marketing. The bill of information states that Prime Pharmacy "contracted with marketers" from two marketing companies "to solicit prescribers" and that Prime Pharmacy "paid kickbacks to marketers when they obtained signed prescriptions that were reimbursed by TRICARE and other health care benefit programs."[18] The "marketers routinely induced prescribers to prescribe [] High-Yield Compound Medications by not only providing [] preprinted prescription forms but also by paying kickbacks to the prescribers[.]"[19] Thus not only did Prime Pharmacy utilize the services of multiple marketing companies, but its marketing efforts were savvy enough to provide preprinted prescription forms[20] for ease of prescribing. Such tactics do not point to a minor marketing effort, but instead indicate a developed and ambitious marketing program.

The factual allegations of the final PSR lend further support to the U.S. Probation office's application of the mass-marketing enhancement. The final PSR states that Blackstone's co-conspirator, Mario Deluca ("Deluca") created an online

---

[18] R. Doc. No. 1, at 5.
[19] *Id.*
[20] The factual basis likewise states that Blackstone and his co-conspirators "created a series of preprinted prescription forms encouraging and directing prescribers (doctors) to prescribe" certain medications. R. Doc. No. 24, at 3.

"portal" which was used to collect data on profits, "to calculate kickbacks due to be paid out to marketers[,]" and for "marketers [to] further disburse[] their commissions/kickbacks to doctors and beneficiaries."[21] The final PSR further notes that "Deluca attended meetings with Auzine with marketing companies where Auzine . . . attempted to make agreements to receive new prescriptions[,]" and one of those meetings occurred in California.[22] As alleged in the final PSR, "Auzine and/or his family members collected over $1,300,000 in commission/kickback fees for Auzine serving as an illicit marketer."[23] Blackstone does not allege that the marketing activities of Auzine and Deluca were not reasonably foreseeable. These factual allegations—none of which Blackstone has objected to[24]—are further evidence of a wide-reaching and well-coordinated conspiracy to market Prime Pharmacy broadly and the efficacy of that effort.

In light of the foregoing, the Court finds by a preponderance of the evidence that application of the U.S.S.G. § 2B1.1(b)(2)(A)(ii) mass-marketing enhancement to Blackstone's offense level is appropriate. Blackstone's objection shall therefore be overruled and his offense level shall remain at 25, as calculated by the U.S. Probation Office.[25]

---

[21] R. Doc. No. 86, ¶ 33.
[22] *Id.*
[23] *Id.* ¶ 32.
[24] *See* R. Doc. No. 57.
[25] R. Doc. No. 86, ¶ 71.

7

## III.     CONCLUSION

Accordingly,

**IT IS ORDERED** that Blackstone's objection to the application of the two-level U.S.S.G. § 2B1.1(b)(2)(A)(ii) mass-marketing enhancement is **OVERRULED**.

New Orleans, Louisiana, June 14, 2023.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**